**Nancy J. ZELNO, Petitioner,**

v.

**LINCOLN INTERMEDIATE UNIT NO. 12 BOARD OF DIRECTORS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2001.

Decided Nov. 8, 2001.

Reconsideration Denied Jan. 8, 2002.

Robert Glessner, York, for petitioner.

Kim Ronald Smith, Lancaster, for respondent.

Before PELLEGRINI, J.,
FRIEDMAN, J., and RODGERS, Senior
Judge.

PELLEGRINI, Judge.

Nancy J. Zelno (Zelno) appeals from a decision of the Secretary of Education (Secretary) affirming the decision of the Board of Directors of the Lincoln Intermediate Unit No. 12 (Board) to dismiss her from her teaching position on the grounds of immorality.

Zelno was a tenured professional employee assigned to teach in an alternative education program operated by a drug and alcohol residential treatment facility for court-adjudicated adolescent males. She taught the education component of the rehabilitation program in which students are required to undergo rehabilitation and treatment for drug and/or alcohol addiction or related problems.

On May 5, 1999, Zelno pled guilty to violating Section 3731 of the Motor Vehicle Code (driving under the influence of alco-

hol, a misdemeanor II level offense) and to violating Section 1542 of the Motor Vehicle Code (driving while her license was suspended for a prior DUI offense, a summary level offense). 75 P.S. § 3731 and § 1543. These represented Zelno's third DUI offense and second offense for driving while her license was suspended as a result of a prior DUI. Zelno was sentenced to serve a prison sentence on consecutive weekends during the school year and then remain incarcerated over the summer until the sentence was served, which was in August 2000, for a total of 92 days in jail. Zelno's sentence was to run in part consecutively with a sentence Zelno was already serving for a previous DUI conviction that would have been completed in November 1999. During the summer of 2000, her employer learned of her convictions and incarceration and initiated dismissal proceedings contending that her conduct violated Section 1122 of the Public School Code of 1949 [1] regarding immorality and intemperance.[2] 24 P.S. § 11–1122.

Before the Board, Zelno did not dispute her convictions.[3] Four members of the school district administration appeared, as well as the assistant executive director of the Children's Home of York, which supervised the specific program Zelno taught, and presented testimony and introduced exhibits. The witnesses, all members of the community within the jurisdiction of the school district, testified that Zelno's behavior offends the morals of the commu-

---

**1.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—26–2601H.

**2.** Other charges brought against Zelno also included charges on the basis of persistent negligence and willful neglect of duties relating to falsifying information contained in attendance records and transporting students in the course of employment without a valid driver's license. The first of these charges was dropped by the school district prior to the hearing before the Board. The Secretary

of Education reversed the Board's finding on the falsification of attendance records determining that there was insufficient evidence to sustain that charge.

**3.** Zelno only testified regarding the charge against her for falsification of attendance records. She also presented two witnesses regarding that charge, Timothy Law, a teacher of self-motivation for children, and Janet Kaltreider, a teacher for the school district.

nity and sets a bad example for the students.

After a hearing by the Board, the majority (11 ayes, one abstention and zero nays) voted to approve Zelno's termination and separately concluded that Zelno's conduct constituted immorality under the School Code. In accordance with Section 1131 of the School Code, 24 P.S. § 1131, Zelno appealed her termination to the Secretary of Education (Secretary) and, following a *de novo* review and hearing, the Secretary affirmed the Board's decision. Zelno now appeals that decision.[4]

 Under Section 1122 of the School Code, conduct constituting immorality is cause for termination of a tenured professional employee. 24 P.S. § 11–1122. Although not defined in the School Code, immorality has been defined by the courts as "a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and elevate." *Ho-*

*rosko v. Mt. Pleasant Township School District,* 335 Pa. 369, 6 A.2d 866 (1939); *Dohanic v. Commonwealth of Pennsylvania, Dept. of Education,* 111 Pa.Cmwlth. 192, 533 A.2d 812 (1987). To demonstrate immorality, it must be established that the conduct claimed to constitute immorality actually occurred, that such conduct offends the morals of the community, and that the conduct is a bad example to the youth whose ideals the teacher is supposed to foster and elevate. *Kinniry v. Abington School District,* 673 A.2d 429 (Pa. Cmwlth.1996). The Secretary conducts a *de novo* review and makes the determination of whether a teacher's conduct offends the moral standards of the community, but this is a legal determination and will only be sustained if it is legally correct and supported by substantial evidence. *Id.*

Zelno contends that the Secretary erred in determining that her conduct was immoral[5] and, even if it were, dismissal was

4. Our scope of review when the Secretary has affirmed the dismissal of a teacher is limited to determining whether findings of fact are supported by substantial evidence, errors of law were committed, or constitutional rights were violated. *Kinniry v. Abington School Dist.,* 673 A.2d 429 (Pa.Cmwlth.1996).

5. Examples of conduct that have been determined to be immoral and not merely unprofessional under the School Code include trafficking in counterfeit goods or services, *Kinniry v. Abington School District,* 673 A.2d 429 (Pa.Cmwlth.1996); shoplifting, *Lesley v. Oxford Area School District,* 54 Pa.Cmwlth. 120, 420 A.2d 764 (1980); plea of nolo contendere to federal charge of operating an illegal gambling business, *Baker v. School District of City of Allentown,* 29 Pa.Cmwlth. 453, 371 A.2d 1028 (1977); lying and making false statements to school district staff, *Riverview School Dist. v. Riverview Education Association,* 162 Pa.Cmwlth. 644, 639 A.2d 974 (1994); misappropriation of school-administered funds, *Appeal of Flannery,* 406 Pa. 515, 178 A.2d 751 (1962); writing love letters to students or seeking the affection of students, *Manheim Cent. Ed-*

*ucation Association v. Manheim Cent. School District,* 132 Pa.Cmwlth. 94, 572 A.2d 31 (1990), *Keating v. Board of School Directors of Riverside School District,* 99 Pa.Cmwlth. 337, 513 A.2d 547 (1986); proposed spanking of female students, *Penn–Delco School District v. Urso,* 33 Pa.Cmwlth. 501, 382 A.2d 162 (1978); calling a female student a "slut" and a "prostitute," *Bovino v. Board of School Directors of Indiana Area School District,* 32 Pa.Cmwlth. 105, 377 A.2d 1284 (1977); and misleading the Liquor Control Board into issuing a liquor license in a teacher's name for a father's business, *Appeal of Batrus,* 148 Pa.Super. 587, 26 A.2d 121 (1942). Conduct determined not to be immoral includes being convicted for the summary offense of harassment, *Horton v. Jefferson County–Dubois Area Vocational Technical School,* 157 Pa.Cmwlth. 424, 630 A.2d 481 (1993); engaging in a water fight with students and spraying them with cleaning fluid, *Everett Area School District v. Ault,* 120 Pa.Cmwlth. 514, 548 A.2d 1341 (1988); and disapproving of the use of slang terms with sexual connotations but asking students to supply definitions of those words, *Central*

not warranted because witnesses could not identify any particular person whose morals had been corrupted or that her crimes interfered with her ability to teach. As for her argument that a conviction for drunken driving is not tantamount to immorality justifying her termination, the argument would be more persuasive if it were not her third offense. A third offense indicates not a single act of misjudgment, but rather a pattern of conduct that is not only damaging to herself, but also puts the public in serious danger.

The concept that more than one offense for drunken driving transforms the conduct that in the first instance from a serious mistake to immoral conduct is recognized by Section 3731(e)of the Vehicle Code, 75 Pa.C.S. § 3731(e), which provides:

(e) Penalty.—

(1) Any person violating any of the provisions of this section is guilty of a misdemeanor of the second degree, except that a person convicted of a third or subsequent offense is guilty of a misdemeanor of the first degree, and the sentencing court shall order the person to pay a fine of not less than $300 and serve a minimum term of imprisonment of:

(i) Not less than 48 consecutive hours.

(ii) Not less than 30 days if the person has previously accepted Accelerated Rehabilitative Disposition or any other form of preliminary disposition, been convicted of, adjudicated delinquent or granted a consent decree under the Juvenile Act (42 Pa.C.S.

§ 6301 et seq.) based on an offense under this section or of an equivalent offense in this or other jurisdictions within the previous seven years.

(iii) Not less than 90 days if the person has twice previously been convicted of, adjudicated delinquent or granted a consent decree under the Juvenile Act based on an offense under this section or of an equivalent offense in this or other jurisdictions within the previous seven years.

(iv) Not less than one year if the person has three times previously been convicted of, adjudicated delinquent or granted a consent decree under the Juvenile Act based on an offense under this section or of an equivalent offense in this or other jurisdictions within the previous seven years.

(2) Acceptance of Accelerated Rehabilitative Disposition, an adjudication of delinquency or a consent decree under the Juvenile Act or any other form of preliminary disposition of any charge brought under this section shall be considered a first conviction for the purpose of computing whether a subsequent conviction of a violation of this section shall be considered a second, third, fourth or subsequent conviction.

As can be seen from Section 3731(e) of the Vehicle Code, the nature of the offense for driving under the influence increases in seriousness and penalty—with Accelerated Rehabilitative Disposition for a first time offender resulting in no conviction and no penalty up to a misdemeanor in the first degree with up to one-year in jail.[6] In this

---

*York School District v. Ehrhart*, 36 Pa. Cmwlth. 278, 387 A.2d 1006 (1978).

**6.** Five individuals who are members of the community under the jurisdiction of the Lincoln Intermediate Unit all testified that Zelno's conduct offended the morals of their community and set a bad example for the students and caused grave concern with respect to her role as a mentor and role model to her students. Zelno failed to cross-examine these witnesses on this point and failed to put forward her own witnesses to rebut this position.

case, Zelno was convicted of DUI three times and she received a sentence of 90 days, evidencing that her pattern of conduct resulting in a criminal offense conviction of a type that constituted immoral conduct as that term is used in the School Code.[7]

Even if her conduct is immoral, Zelno contends that the Board did not prove its case because it did not prove that her conduct corrupted the morals of her students or her ability to teach. However, showing that her conduct impacted on a specific student or her ability to teach is not relevant to show immorality; proof of the conduct makes her a bad role model. Ignoring that she was teaching students who were at this school because they also had drug and alcohol problems, her conduct, which resulted in three drunken driving convictions and two more for driving without a license, is *per se*, conduct that is a bad example to students whose ideals she as a teacher is supposed to foster. This affects her credibility and impacts her ability to teach.[8]

Because both the pattern of conduct that she engaged in resulting in her conviction of a misdemeanor of the first degree as well as the testimony of witnesses that her conduct offended the morals of her community and set a bad example for the students that she is to serve, the Secretary properly affirmed the Board's determination that Zelno's conduct constituted immorality as that term is used in the School

Code and that she should be terminated. Accordingly, the Secretary's decision dismissing Zelno for immorality under the School Code is affirmed.

### *ORDER*

AND NOW, this *8th* day of *November,* 2001, the Order of the Secretary of Education of the Commonwealth of Pennsylvania, dated February 1, 2001, at TTA No. 3–00, is affirmed.

7. In *Santry v. School District of Philadelphia,* TTA–2–99, 37 SLIE 5 (1999), a case before the Secretary of Education, it was determined that under certain circumstances, conduct involving drinking and driving may constitute conduct that is immoral under the School Code. While we do not agree that alcohol-related offenses may be considered, *per se,* immoral merely because "many in the Commonwealth view drinking and driving as not only dangerous and unacceptable but as immoral," we do agree that under certain cir-

cumstances, conduct involving drinking and driving may be immoral because it sets a bad example for students and offends the morals of the community in which the actions occurred. This is one of those circumstances.

8. Petitioner's argument that the Board has failed to point to a specific student whose morals have been corrupted or that her actions have interfered with her ability to teach is not relevant under the current case law.